## HARGRAVE vs. CONROY.

1. A contract, under seal, embracing the whole subject matter of a former contract not under seal, supersedes the former.

2. A participation in the profits of any business or undertaking, to constitute one a partner, must be a general participation in the profits as such. A person who is not a principal, has no control of the business, and no power as a partner in the firm, but who is employed as a superintendent or agent, receiving by way of compensation for his services a certain share of the profits, is not thereby a partner.

3. Such relation does not, as between the parties, constitute them partners, and generally does not as to strangers. If the profits, however, are so greatly out of proportion to the services rendered, as to show that the arrangement is a shift to avoid responsibility, and that creditors are injured by the abstraction of so large a part of the avails of the business, it will be held as to them, that such person is a partner.

4. But where a party agrees to serve another for a part of the profits to be derived from the business, but they are by the express terms of the agreement to be paid for his services, he cannot call for an account as partner; but he has a right to an account of the profits, and to the aid of this court in discovery, and taking an account of profits.

5. When a party under a contract to perform a certain work at a certain rate, has performed part, and the performance of the residue was prevented without the fault of either party, he is entitled to payment in proportion, at the rate agreed upon for the whole.

The hearing of this cause was had upon bill, answer, and replication, no proofs having been taken by either party.

*Mr. Richards,* for complainant.

*Mr. E. W. Scudder,* for defendant.

THE CHANCELLOR.

From the position in which this cause is presented to the court, the answer must be taken as true only so far as responsive to the bill. All other matters contained in it, require to be sustained by proof, of which none is offered. The allegation in the bill not admitted by the answer, for like want of proof, cannot be regarded in the decision of the cause.

2 A *

The complainant claims, and the defendant admits, that he was employed by the defendant to superintend the execution of a contract, which the defendant had entered into with "The Soldiers National Cemetery," at Gettysburg, to furnish and place the headstones in the cemetery at Gettysburg.

Both agree that the agreement was in writing, signed by the parties. The bill sets forth, in part, the substance of two agreements, the first of which was dated January 25th, 1865, which, as the bill alleges, was not very skillfully drawn and expressed. The second was dated January 31st, 1865, was drawn by a person skilled in such matters, and was executed by both parties under their hands and seals. It has annexed to it a bond executed by the complainant, with a surety, to the defendant, for the faithful performance of his part of the contract. The answer admits that some such contract as that stated in the bill, was executed between the parties, but calls for the production and proof of it. The answer sets forth at length the second contract of the 31st of January. This contract made subsequently under seal, and embracing the whole subject matter contained in the first one, would be held to supersede the first, which would be merged into it, even if it were sufficiently proved to be taken into consideration in this suit.

By this, Hargrave, for the *consideration* stipulated in it, agreed personally to superintend the work, procure the hands, and perform all the labor required by the contract. And Conroy agreed to pay him "*for the said services*," at the rate of three dollars per day, Sundays excepted, while engaged in the work, to be paid monthly; and also one-half of the clear profits on the contract, upon the completion of the work.

The bill claims that it may be gathered from the papers, and the action of the parties, that there was an intention to form a partnership. No action is stated, except that Hargrave went to work to perform his agreement, and employed hands, whom he paid with money received by Conroy from the company, and handed to him for that purpose. The

Hargrave *v.* Conroy.

answer denies that there was any agreement or intention to form a partnership, or that the agreement between them made them partners.

Although it is in general terms laid down by the authorities, that a participation in the profits of any business or undertaking, is sufficient to constitute one a partner, yet it must be a general participation in the profits as such. But where one, who is not a principal, has no control of the business, or no power as a partner in the firm, but is employed as a superintendent or agent, receives by way of compensation for his services a certain share of the profits, this does not constitute him a partner; it never does as between the parties, and generally does not as to strangers. If the profits are so greatly out of proportion to the services rendered, as to show that the arrangement is a shift to avoid responsibility, and that creditors are injured by the abstraction of so large a part of the avails of the business, it will be held as to them that such person is a partner.

This doctrine at first seemed in conflict with the English authorities, but is now firmly established as the law in this country, by decisions in most of the states, and in the Supreme Court of the United States ; and is adopted by text writers as the settled law. *Collyer on Partnership,* § 25, *and note* 2 ; *Story on Partnership,* § 32, 33, 34, *and* 49 ; *Bradley* v. *White,* 10 *Metc.* 303 ; *Holmes* v. *The Old Colony R. R. Co.,* 5 *Gray* 58 ; *Fitch* v. *Harrington,* 13 *Gray* 474 ; *Vanderburgh* v. *Hull,* 20 *Wend.* 70 ; *Burckle* v. *Eckart,* 1 *Denio* 341, *and* 3 *Comst.* 132 ; *Ogden* v. *Astor,* 4 *Sandf. S. C. R.* 311 ; *Brockway* v. *Burnap,* 16 *Barb.* 309 ; *Loomis* v. *Marshall,* 12 *Conn.* 69 ; *Berthold* v. *Goldsmith,* 24 *How.* 536.

The Supreme Court of this state adopted it in *Perrine* v. *Hankinson,* 6 *Halst. R.* 181 ; this court, in *Nutting* v. *Colt,* 3 *Halst. C. R.* 539 ; and the Court of Errors, in *Sheridan* v. *Medara,* 2 *Stockt.* 469 ; in which the Chief Justice, in delivering the opinion of the Court of Errors, after stating the

doctrine that a participation of profits will generally constitute a person a partner, and that the agreement that Sheridan was to receive twenty-five per cent. on the money advanced by him, gave him nineteen per cent. of it out of the profits, and constituted him, as to third persons, a partner, states that if Combs and Sheridan " did not intend to become partners, as between themselves they were not partners."

There is nothing in this case, if this rule be taken for our guide, to make the defendant a partner. The part of the profits to be paid to him, were stipulated to be paid, in an agreement made by him with the defendant to serve the defendant for a compensation ; and it was expressly, and in terms, agreed to be paid to him for his services.

The complainant then is not entitled to call the defendant to account as partner. But as the pay to which he was entitled depends upon the profits, he has a right to call the defendant to account for a statement of the profits, and is entitled to the aid of this court in discovery, and taking an account of the profits. The bill cannot be dismissed for want of jurisdiction.

The answer states that their profits did not exceed $4000. It does not go into detail, or give the account of receipts and payments ; but the complainant did not except to it on that account, but filed a replication, putting the statement in issue, and then brought the cause to hearing without proofs to contradict the answer. This part of the answer being most strictly responsive, must be taken as true.

The answer states that the defendant made to the complainant four payments, on account of his services under the contract, amounting in the whole to $2600. This is responsive to the bill, and must be taken as true.

The answer also states in the same manner, that the work of the complainant was commenced on the 1st day of April, and ended on the 18th day of September, in 1865 ; a period which includes only one hundred and seventy-one days, and one hundred and forty-seven working days, for which, if none had been lost, the per diem pay would have been only $441,

making with one half of the profits $2441, which is less than the amount that was paid him by the defendant.

But if the answer was not taken as responsive in the allegation of the amount paid, the payment of $1800 of the profits is admitted in the bill; and it is also admitted by the bill that the complainant, by reason of a broken leg, was confined to his bed many weeks, and not able to go to, or superintend the work, which was done by the defendant, until he recovered, when the defendant left, and he superintended the work until its completion. The answer says, that the complainant began his work on the 1st of April, became disabled on the 1st of May, and did not from that time until the completion of the work on the 18th of September, 1865, work and superintend the work according to the contract. The indefinite term many weeks, in the bill, is fixed by the answer, (which as to this is clearly responsive) to be twenty weeks out of the twenty-five, which it took to perform the contract. If the sum of $1900, claimed by the bill to be a part of the profits, were added to the $4000, and the profits assumed to be $5900, the whole sum claimed by the complainant, and the half assumed to be $2900, even then the amount admitted by him to be paid, which is more than three-fifths of that sum, much exceeds the proportion of the profits due to him by the contract, if he is to receive pay according to the amount of services performed, on the basis of the contract price for full services.

As to his per diem, the allegations of the answer are clearly responsive, and show that he has been over paid. And there can be no question that his pay out of the profits, must be estimated according to the amount of the service performed His services were what the defendant bargained for. If accident, sickness, or death, had prevented his performing his engagement at all, he would have been entitled to no pay. Where part has been performed, and the performance of the residue prevented without the fault of either party, he is entitled to pay in proportion, at the rate agreed upon for the whole.

As to the amounts advanced by the complainant, which

he alleges were not paid to him, the defendant fully and responsively answers, that it was paid. As to the supplemental contract under which he claims to have performed services for the defendant, the answer explicitly denies that he ever rendered any services under it, or that he was ever employed to render any.

In this position of the pleadings there is nothing to refer to a master. The truth of the answer where responsive, cannot be questioned, and if it be true, the complainant has no cause of action against the defendant.

The bill must be dismissed.